William M. Goodman (CA Bar No. 61305)
wgoodman@kasowitz.com
Lyn R. Agre (CA Bar No. 178218)
lagre@kasowitz.com
Jason S. Takenouchi (CA Bar No. 234835)
jtakenouchi@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030

Andrew A. Davenport (*Admitted Pro Hac Vice*)
adavenport@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1349 West Peachtree Street, N.W.
Suite 1500
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

Attorneys for Plaintiff-Relator
Kasowitz, Benson, Torres & Friedman LLP

**SEALED BY COURT ORDER**

**FILED**
SEP - 9 2015
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Ex rel.* KASOWITZ, BENSON, TORRES & FRIEDMAN LLP, <br><br> Plaintiff, <br><br> v. <br><br> BASF CORPORATION; BAYER MATERIALSCIENCE, LLC, f/k/a/ MILES, INC. f/k/a MOBAY CHEMICAL COMPANY; THE DOW CHEMICAL COMPANY; and HUNTSMAN INTERNATIONAL LLC, f/k/a IMPERIAL CHEMICAL INDUSTRIES PLC and f/k/a ICI AMERICAS, INC. <br><br> Defendants. | CIVIL ACTION NO. CV 15 2262 -DMR <br><br> MOTION FOR LEAVE TO AMEND COMPLAINT <br><br> Date: October 15, 2015 <br> Time: 11:00 a.m. <br> Judge: Hon. Donna M. Ryu <br> Courtroom: 4 – Third Floor <br><br> **FILED IN CAMERA AND UNDER SEAL PER** <br> **31 U.S.C. § 3730(b)(2)** |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................................... 1

STATEMENT OF RELIEF SOUGHT ..................................................................................... 1

POINTS AND AUTHORITIES SUPPORTING MOTION ..................................................... 2

    A.    Summary of Proposed Amendment ............................................................................ 2

    B.    KBT&F is Promptly and Timely Requesting Leave to Amend after Discovering Previously-Unavailable Evidence ......................................................... 4

    C.    The Previously-Unavailable Evidence Establishes Additional Claims against Huntsman .................................................................................................... 6

    D.    The Court Should Give KBT&F Leave to Amend ..................................................... 9

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at the Oakland Courthouse, Courtroom 4 - 3rd Floor, 1301 Clay Street, Oakland, CA 94612, on October 15, 2015, at 11 a.m., or as soon thereafter as the matter may be heard, *qui tam* plaintiff and relator Kasowitz, Benson, Torres & Friedman LLP (KBT&F) will and hereby does move the Court, under Rule 15 of the Federal Rules of Civil Procedure, for an Order granting it leave to amend its complaint to assert claims based on newly-discovered and previously-unavailable evidence. KBT&F bases this Motion on this Notice of Motion and Motion, the Points and Authorities set out below, the record and filings in this case, oral argument of counsel (if any), and such other and further matters as the Court may consider.

## STATEMENT OF RELIEF SOUGHT

KBT&F, on behalf of itself and the United States of America (United States), seeks this Court's leave under Federal Rule of Civil Procedure 15(a)(2) to amend its complaint to allege four claims against defendant Huntsman International LLC (Huntsman) that KBT&F has already asserted against Huntsman's co-defendants, and to amend the factual allegations in the complaint to reflect the newly-discovered and previously-unavailable evidence on which it bases these additional claims. Specifically, KBT&F requests leave:

1. To amend Count I to assert against Huntsman an FCA claim—already asserted in that count against the other defendants—for Huntsman's knowing and improper concealment or avoidance of its multiple contractual obligations to pay to the United States Government the damages from its breach of the CAP contract.

2. To amend Count II to assert against Huntsman an FCA claim—already asserted in that count against the other defendants—for Huntsman's knowing and improper concealment or avoidance of its multiple contractual obligations to transfer to the United States Government the hazard information that the CAP contract required it to transfer to the EPA.

MOTION FOR LEAVE TO AMEND COMPLAINT
CASE NO. CV 15 2262-DMR

3. To amend Count III to assert against Huntsman FCA claims—already asserted in that count against the other defendants—for Huntsman's knowing failure to deliver money to the EPA, as required by the CAP contract.

4. To amend Count III to assert against Huntsman FCA claims—already asserted in that count against the other defendants—for Huntsman's knowing failure to deliver property to the EPA, as required by the CAP contract.

5. To amend the factual allegations throughout the complaint to reflect the newly-discovered and previously-unavailable evidence.

Because KBT&F has already asserted these claims against Huntsman's co-defendants, this amendment will simplify the case by making each defendant subject to each asserted claim. And no defendant will be prejudiced by the amendment: No defendant has been served and discovery has not yet commenced because the False Claims Act requires this action to remain under seal while the United States Government determines whether to intervene. Rule 15(a)(2) instructs that "leave shall be freely given" in these circumstances.

As required by Civil L.R. 10-1, KBT&F attaches as Exhibit A its proposed Amended Complaint. Given the length of the original and amended complaints, KBT&F also attaches as Exhibit B its proposed Amended Complaint in redline format to more fully disclose the proposed amendments. Because the exhibits referenced in the proposed Amended Complaint are voluminous and bulky, KBT&F files those exhibits, including the three new exhibits 82, 83, and 84, in a separate, indexed, two-volume appendix.

## POINTS AND AUTHORITIES SUPPORTING MOTION

### A. Summary of Proposed Amendment

KBT&F alleged in its Complaint that each defendant has violated and continues to violate its continuing statutory, regulatory, and/or contractual duties to provide the United States Environmental Protection Agency with health hazard information relating to certain isocyanate

-2-

MOTION FOR LEAVE TO AMEND COMPLAINT
CASE NO. CV 15 2262-DMR

chemicals that each defendant manufactures, processes, and sells. Each defendant's violations imposed on it continuing obligations to pay money (statutory penalties or contractual damages) to the EPA, and the relevant statutes, regulations, and/or contracts imposed on each defendant continuing obligations to transfer property (the concealed health hazard information) to the EPA. KBT&F alleged, among other False Claims Act (FCA) violations, that each defendant violated the FCA when it knowingly and improperly concealed or avoided these payment or property-transfer obligations—FCA violations commonly called "reverse false claims." 31 U.S.C. § 3729(a)(1)(G).

KBT&F alleged that each defendant's payment or property-transfer obligations arose in two separate contexts—the statutory/regulatory context (TSCA reporting violations) for all defendants, and the contractual context for defendants BASF Corporation (BASF), Bayer MaterialScience LLC (Bayer), and Dow Chemical Company (Dow), but not for Huntsman. When KBT&F filed the complaint, it was unable to allege contract-based FCA claims against Huntsman because it possessed no evidence that Huntsman had participated in the EPA's Toxic Substances Control Act (TSCA) Section 8(e) Compliance Audit Program (CAP). (CAP was a program in which the EPA granted a company limited amnesty as to the penalties arising from its prior TSCA reporting violations in exchange for the company's contractual agreement to certify its TSCA-reporting compliance following its internal audit of its files. Complaint at Section IV.E, ¶¶ 896-899, pages 189-190.)

On July 30, 2015, in its interim response to KBT&F's January 5, 2015 FOIA request, the United States Environmental Protection Agency (EPA) produced two documents that supply the previously-unavailable evidence necessary to assert such claims against Huntsman. Specifically, these two documents establish that Huntsman participated in CAP and that, like its co-defendants, Huntsman therefore agreed and was contractually required to (a) audit its historical TSCA reporting compliance, (b) report to the EPA all previously unsubmitted reportable

-3-

MOTION FOR LEAVE TO AMEND COMPLAINT
CASE NO. CV 15 2262-DMR

information, and (c) certify to the EPA its completion of these contractual obligations. Proposed Amended Complaint at Section IV.E, ¶¶ 908-909, page 194. When combined with the extensive evidence that Huntsman intentionally withheld and concealed this reportable information from the EPA, as KBT&F detailed in its original complaint at Section IV.C, ¶¶ 241-799, pages 52-160 and Section V, ¶¶ 926-1123, pages 200-242, this newly-discovered evidence establishes that Huntsman—like its co-defendants—breached its CAP contract with the EPA, became liable to the EPA for contract damages, and violated the FCA beginning May 20, 2009 in *four* ways: (a) by concealing and improperly avoiding its contractual *(1)* payment and *(2)* property-transfer obligations to the EPA [31 U.S.C. § 3729(a)(1)(G)] and (b) by knowingly failing to deliver to the EPA, as required by the CAP contract, *(3)* money and *(4)* property to be used by the EPA [31 U.S.C. § 3729(a)(1)(D)].

Accordingly, KBT&F requests leave to amend Counts I, II, and III to assert against Huntsman these contract-based FCA claims—already asserted in those counts against the other defendants—and to amend the factual allegations throughout the complaint to reflect the newly-discovered and previously-unavailable evidence.

**B.    KBT&F is Promptly and Timely Requesting Leave to Amend after Discovering Previously-Unavailable Evidence**

When KBT&F filed the Complaint on May 20, 2015, it had insufficient evidence to allege that Huntsman had entered into a CAP contract with the EPA. Declaration of Andrew A Davenport at ¶ 12. Before filing the complaint, KBT&F had diligently searched the public record to identify those companies that participated in CAP. Davenport Dec. at ¶ 4. KBT&F also served on the EPA a January 5, 2015 FOIA request to produce documents that would identify those companies that participated in CAP. Davenport Dec. at ¶ 5 and Exh. 29 to Complaint (also Exh. A to Davenport Dec.). In March 2015, the EPA indicated that the record-retention period for CAP documents had expired and that it was able to locate only one CAP-

related document, a "Final Summary Chart" that showed BASF, Bayer, and Dow's participation in the program, but not Huntsman's. Davenport Dec. at ¶ 6 and Exh. 29 to Complaint (also Exh. A to Davenport Dec.).

While that chart identified "Zeneca, Inc., f/k/a ICI America, Inc." as a CAP participant (see page 3 of the chart in Complaint Exh. 29 and declaration Exh. A), that identification did not provide evidence sufficient for KBT&F to allege that Huntsman participated in CAP through its predecessor-in-interest ICI Americas, but rather appeared to indicate just the opposite, as some background information will demonstrate. Davenport Dec. at ¶ 7. The EPA's guidance documents indicate that it terminated CAP in May 1996, and then "reached final settlements with CAP participants, announced those settlements on October 15, 1996, and collected payment for stipulated penalties." "TSCA Section 8(e); Notification of Substantial Risk; Policy Clarification and Reporting Guidance," 68 Fed. Reg. 33129, June 3, 2003, at 33131, Unit II.D; *see also* Complaint at ¶ 910. KBT&F therefore reasonably concluded that the EPA had prepared this "Final Summary Chart," which described the program's outcome, sometime after May 1996. Davenport Dec. at ¶ 8.

In 1993, however, prior to the EPA's preparation of the chart, ICI Americas' parent company, KBT&F is informed and believes that Imperial Chemical Industries plc, had sold its pharmaceuticals business (including the pharmaceutical division of ICI Americas) to Zeneca Group, which later became AstraZeneca plc. Davenport Dec. at ¶ 9. But ICI Americas continued to operate its chemical business as ICI Americas until Huntsman acquired ICI Americas in 2000, as part of Huntsman's acquisition of the world-wide chemical business of Imperial Chemical Industries plc. Davenport Dec. at ¶ 10; Complaint at ¶ 36.

Accordingly, KBT&F reasonably concluded that the EPA's post-May-1996 identification of "Zeneca, Inc., f/k/a ICI America, Inc." as a CAP participant appeared to include (as relates to ICI Americas) only those pharmaceutical operations acquired by and being operated then by

Zeneca and to exclude the ongoing chemical operations of ICI Americas. Davenport Dec. at ¶ 11. Put differently, since ICI Americas was continuing to operate its chemical business in May 1996 under the name ICI Americas, the "formerly known as" designation in the EPA's Final Summary Chart appeared to exclude the ongoing chemical operations of ICI Americas (since those operations were *still* known as ICI Americas), and to include only those pharmaceutical operations acquired by Zeneca (since those operations were *formerly* known as ICI Americas). Davenport Dec. at ¶ 11.

Thus, KBT&F reasonably concluded that the EPA's Final Summary Chart provided KBT&F with insufficient evidence to assert these contract-based FCA claims against Huntsman, and in fact appeared to refute the existence of such claims. Davenport Dec. at ¶ 12.

On July 30, 2015, more than two months after KBT&F filed its original complaint, the EPA provided an interim response to KBT&F's separate FOIA request for other information. Exhibit 82 to proposed Amended Complaint (also Exhibit B to Davenport Dec.). This response provided the previously-unavailable evidence necessary to assert these claims. Davenport Dec. at ¶¶ 13-15. In accordance with the FCA, KBT&F promptly disclosed that evidence to the United States Government, and now promptly files this motion for leave to amend the complaint. Davenport Dec. at ¶¶ 17-18.

C.  **The Previously-Unavailable Evidence Establishes Additional Claims against Huntsman**

Two documents contained in the EPA's July 30, 2015 interim FOIA response supply the previously-unavailable evidence required to assert contract-based FCA claims against Huntsman. Specifically, those documents constitute two separate instances in which Huntsman's predecessor-in-interest, ICI Americas, submitted chemical health-hazard information to the EPA under and in accordance with CAP. Davenport Dec. at ¶ 14 and Exhibits 83 and 84 to the proposed Amended Complaint (also attached as Exh. C and D to Davenport Dec.). The third

page of each exhibit is a cover letter from ICI Americas to the attention of the "Section 8(e) Coordinator (CAP Agreement)" at the EPA. In each cover letter ICI Americas referenced its "CAP Identification Number" (8ECAP-0040), and expressly stated that it (ICI Americas) was submitting information to the EPA "in accordance with the requirements and established guidelines of the TSCA Section 8(e) Compliance Audit Program (CAP)." Davenport Dec. at ¶ 15; Exhibits 83 and 84 to proposed Amended Complaint (also attached as Exh. C and D to Davenport Dec.).

The EPA required each company that participated in CAP to sign the CAP contract, the text of which is published in the Federal Register. Complaint at ¶ 898 and Exh. 26 to Complaint at 4129-4131, Section 2. By showing that Huntsman participated in CAP, these two documents therefore establish that Huntsman entered into a written CAP contract with the EPA, or at a minimum that Huntsman agreed by its participation to be bound by the contract as published in the Federal Register. And when combined with the extensive evidence of Huntsman's intentional concealment of hazard information that the CAP contract required it to submit to the EPA, as alleged thoroughly in the Complaint at Section IV.C, ¶¶ 241-799, pages 52-160 and Section V, ¶¶ 926-1123, pages 200-242, these documents provide the evidentiary basis, as described below, for additional FCA claims against Huntsman.

Specifically, Huntsman agreed in that CAP contract to audit its historical TSCA Section 8(e) reporting compliance and submit all previously unsubmitted "substantial risk information." Proposed Amended Complaint at ¶¶ 907-908, page 194. By intentionally concealing this information rather than submitting it to the EPA, Huntsman violated its contractual obligations to transfer property (the substantial risk information) to the EPA. Proposed Amended Complaint at ¶ 929, page 2014; Section VII.B.2, ¶¶ 1483-1492, pages 334-335; and Section VII.B.2.d, ¶¶ 1559-1580, pages 349-353. When it intentionally failed to transfer this contractual property to the EPA, Huntsman committed two categories of FCA violations:

- Beginning on May 20, 2009, and on every day thereafter, Huntsman committed multiple FCA violations by knowingly and improperly concealing or avoiding these contractual *property-transfer* obligations. 31 U.S.C. § 3729(a)(1)(G); Proposed Amended Complaint at Section VII.B.2.d, ¶¶ 1559-1580, pages 349-353; and Count II, ¶¶ 1758-1766, pages 386-387.
- Beginning on May 20, 2009, and on every day thereafter, Huntsman committed multiple FCA violations by knowingly failing to deliver to the EPA, as required by the CAP contract, the contractual *property* to be used by the EPA. 31 U.S.C. § 3729(a)(1)(D); Proposed Amended Complaint at ¶¶ 1581-1584, pages 353-354; Section VII.C.2.d, ¶¶ 1703-1720, pages 376-379; and Count III, ¶¶ 1767-1785, pages 388-389.

Additionally, Huntsman agreed in that contract that its failure to fulfill its contractual reporting obligations would authorize the EPA to pursue full penalties for Huntsman's failure to submit any substantial risk information that it should have submitted under CAP contract. Proposed Amended Complaint at ¶ 911, page 194. By intentionally concealing its contractual breaches and its resulting obligations to pay contract damages, Huntsman violated its contractual obligations to pay money to the EPA. Proposed Amended Complaint at ¶ 930, pages 204-206; Section VII.A.2, ¶¶ 1276-1291, pages 287-290; and Section VII.A.2.d, ¶¶ 1355-1375, pages 308-314. When it intentionally failed to transfer this contractual property to the EPA, Huntsman committed two categories of FCA violations:

- Beginning on May 20, 2009, and on every day thereafter, Huntsman committed multiple FCA violations by knowingly and improperly concealing or avoiding these contractual *payment obligations*. Proposed Amended Complaint at and Section VII.A.2.d, ¶¶ 1355-1375, pages 308-314 and Count I, ¶¶ 1749-1757, pages 384-385.
- Beginning on May 20, 2009, and on every day thereafter, Huntsman committed multiple FCA violations by knowingly failing to deliver to the EPA, as required by the CAP

contract, the *breach of contract damages* to be used by the EPA. 31 U.S.C. § 3729(a)(1)(D); Proposed Amended Complaint at ¶¶ 1581-1584, pages 353-354; Section VII.C.1.d, ¶¶ 1633-1648, pages 363-365; and Count III, ¶¶ 1767-1785, pages 388-389.

Thus, these two newly-discovered documents provide the previously-unavailable evidence necessary to assert additional claims against Huntsman.

### D. The Court Should Give KBT&F Leave to Amend

Under Rule 15(a)(1), KBT&F cannot amend its complaint without leave of court except during three future time periods: within twenty-one days of serving the complaint, or within twenty-one days of the service of a responsive pleading or a motion to dismiss. Because the False Claims Act prohibits KBT&F from serving the complaint until the United States Government determines whether to intervene, none of these unilateral-amendment periods will commence for at least several months. (On July 2, 2015, this Court extended through January 20, 2016 the period during which the United States may elect to intervene in this case.) Rule 15(a)(2), however, authorizes this Court to give KBT&F leave to amend the complaint now, while the case is under seal, and provides that "[t]he court should freely give leave when justice so requires." Fed.R. Civ. Proc. 15(a)(2).

This policy of freely giving leave to amend is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). Guided by this inclination favoring amendments, the court should evaluate the request for leave under the factors announced by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962):

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Eminence Capital*, 316 F.3d at 1052 (quoting *Foman v. Davis*, 371 U.S. at 182). The prejudice factor "carries the greatest weight," as prejudice is the "touchstone" of the Rule 15(a) inquiry. *Eminence Capital*, 316 F.3d at 1052 (citations omitted). In fact, "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original).

KBT&F's proposed amendment will not prejudice any defendant. The parties have not yet commenced discovery. Indeed, the defendants are not even aware of the claims at this point, and thus have not even commenced internal investigations. The proposed amendment will not require any defendant to change or adjust its litigation strategy, for none of the defendants have yet even begun to formulate a strategy. As this Court recently observed, a defendant cannot be prejudiced by an amendment that is effected prior to the defendant's appearance: "No such [prejudice] concerns are present here, as this litigation began recently, no defendant has stated an appearance, and there are no deadlines that would shift as a result of the amendment." *Jose Daniel Castillo-Antonio v. Consuela Mejia*, Case No. 14-cv-03637-JSC, 2014 U.S. Dist. LEXIS 16579, *5 (N.D. Cal., Nov. 26, 2014).

Further, KBT&F does not propose the amendment in bad faith or to delay the proceedings. To the contrary, as explained in Section B above, and as shown in the Declaration of Andrew A. Davenport, KBT&F is asserting these claims at the earliest opportunity. Before it filed the complaint, KBT&F diligently searched the public record to identify those companies that participated in CAP. The information it obtained, however, including from the EPA's FOIA response, appeared to indicate that Huntsman had not participated in CAP, and KBT&F therefore did not assert contract-based FCA claims against Huntsman. However, the EPA's July 30, 2015 interim response to a separate FOIA request provided KBT&F with previously-unavailable evidence showing that Huntsman did participate in CAP. KBT&F brings this motion promptly after obtaining that previously-unavailable evidence.

Since none of the defendants have yet been served, the amendment will not delay the case. Rather, the defendants will be served either with KBT&F's Amended Complaint or the United States' amended complaint, and they can commence their investigations and formulate their strategies without any delay occasioned by the amendment. There is no indication that KBT&F is proposing the amendment in bad faith or for a dilatory motive. To the contrary, parties who delay seeking leave to amend "until they ha[ve] sufficient evidence of conduct upon which they c[an] base claims of wrongful conduct" have offered "a satisfactory explanation" for any delay, especially when the lawsuit "is still in its early stages," as is this case. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

Nor is KBT&F's proposed amendment futile. KBT&F has already asserted these very claims against Huntsman's co-defendants, and each defendant will have ample opportunity to challenge the claims once served. Moreover, the amendment will simplify the case by making every defendant subject to each claim.

KBT&F's proposed amendment will neither prejudice any of the defendants nor delay the case. KBT&F offers the amendment in good faith, and promptly after obtaining the previously-unavailable evidence that supports the amendment. The proposed amendment states claims that KBT&F has already asserted against each of the other defendants, and will thus simplify the case by making every defendant subject to each claim.

Given the absence of prejudice, bad faith, undue delay, or futility of the amendment, "there exists a strong *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052 (emphasis in original). KBT&F thus respectfully requests that the Court give KBT&F leave to file its proposed Amended Complaint.

DATED: September 9, 2015.

By: _____
Jason S. Takenouchi

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
William M. Goodman (SBN 61305)
Jason S. Takenouchi (SBN 234835)
101 California Street, Suite 2300
San Francisco, CA 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030
jtakenouchi@kasowitz.com

Andrew A. Davenport (admitted *pro hac vice*)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1349 West Peachtree Street, N.W.
Suite 1500
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081
adavenport@kasowitz.com

*Attorneys for Plaintiff and Relator*
*Kasowitz, Benson, Torres & Friedman LLP*

# CERTIFICATE OF SERVICE

**United States ex rel. Kasowitz, Benson, Torres & Friedman LLP v. BASF Corp., et al., Case No. 15-2262-DMR (Under Seal Filing)**

I, Jordan Mendoza, certify that I am an employee of the law firm Kasowitz, Benson, Torres & Friedman LLP and am a person of such age and discretion to be competent to serve papers. I certify that I am causing a copy of:

**PLAINTIFF AND RELATOR'S MOTION FOR LEAVE TO AMEND COMPLAINT**

to be served this date on the United States in accordance with 31 U.S.C. § 3730(b)(2) and Federal Rule of Civil Procedure 4 as follows:

1. By personal service according to Federal Rule of Civil Procedure 4(i)(1)(A)(i) on the United States Attorney for this district, at:

   Ms. Melinda Haag
   United States Attorney
   Ms. Erica Blachman Hitchings
   Assistant United States Attorney
   United States Attorney's Office
   Federal Courthouse
   450 Golden Gate Avenue
   San Francisco, California 94102-3495

2. By certified mail according to Federal Rule of Civil Procedure 4(i)(1)(B) on the Attorney General of the United States at:

   Hon. Loretta E. Lynch, Attorney General of the United States
   C/O Michael Granston, Director, Civil Frauds Section,
   C/O Daniel Anderson, Deputy Director, Civil Frauds Section
   United States Department of Justice
   Civil Division
   950 Pennsylvania Ave., NW
   Washington, D.C, 20530-0001

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 9, 2015 at San Francisco, California.

_____
Jordan Mendoza

-13-

MOTION FOR LEAVE TO AMEND COMPLAINT
CASE NO. CV 15 2262-DMR